**WO**                          NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Larry J. Busch, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>Owen David Welling, *et al.*,<br><br>                    Defendants. | No. CV-13-02517-PHX-JJT<br>Consolidated with<br>No. CV-15-00045-PHX-JJT<br><br>**ORDER** |

At issue are Plaintiffs and Counterdefendants Larry J. Busch and Busch Law Center, LLC's (collectively, the "Busch Parties") Motion for Summary Judgment (Doc. 121, Busch MSJ), to which Defendant and Counterclaimant Yellow Brick Road, LLC ("YBR") filed a Response (Doc. 132, YBR Resp.) and the Busch Parties filed a Reply (Doc. 136, Busch Reply); and YBR's Cross-Motion for Summary Judgment (Doc. 129, YBR MSJ), to which the Busch Parties filed a Response (Doc. 134, Busch Resp.) and YBR filed a Reply (Doc. 139, YBR Reply). YBR also filed a Response to the Busch Parties' Controverting Statement of Facts ("CSOF") in support of YBR's Motion (YBR CSOF Resp., Doc. 140). Although requested, the Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f).

## I.    BACKGROUND

In early March 2010, YBR's Chief Executive Officer, Owen Welling, became aware of a purported investment opportunity with Alicorn Capital Management ("Alicorn"), presented by its purported principals—John Childs and Scott Koster—in

conjunction with Berea, Inc. ("Berea"). Numerous discussions took place between March and May 2010 before the parties negotiated an agreement in which YBR would pay $300,000 to lease a $10,000,000 standby letter of credit ("SBLC") provided by Success Bullion USA, LLC ("Success Bullion"). The SBLC was purportedly to be used to establish proof of funds so that Berea could initiate trades or purchases of commodities. In exchange for its payment, YBR was to receive 15% of the SBLC's value. Alicorn was to receive a $250,000 "finder's fee" and Success Bullion the remaining $50,000.

In April 2010, YBR and Alicorn memorialized the proposed agreement in an Engagement Letter, which required YBR to wire its payment to Busch Law Center, acting as an escrow agent. The Busch Parties' involvement was governed by the Escrow Instructions, which were jointly drafted by YBR and Alicorn and appended to the Engagement Letter. The Busch Parties were to transfer $50,000 to Success Bullion and then disperse the remaining funds after certain conditions were met. First, a "Notice of Approval" would be issued by Berea after confirming the SBLC format. After YBR, Alicorn, and Berea executed the Notice of Approval, it would be delivered to the Busch Parties. Upon receipt of the Notice of Approval and a stamped copy of the SBLC issued by Success Bullion, the Busch Parties were authorized to wire the remaining $250,000 to Alicorn.

In executing the Escrow Instructions, YBR agreed to "indemnify and hold the [Busch Parties] harmless against any loss, liability, damage, cost or expense, including attorney fees, (a) related in any way to the Busch Parties acting upon any notice, request, waiver, consent, receipt, or other paper or document believed" by the Busch Parties to be signed by YBR or other proper parties, "or (b) incurred in connection with any act or thing done pursuant to the Escrow Instructions," and to "hold [the Busch Parties] harmless as to any liability incurred by [the Busch Parties] to any person, firm, or corporation by reason of its having accepted or in carrying out any of the terms hereof." The Escrow Instructions also required YBR to "reimburse [the Busch Parties] all its expenses, including . . . counsel fees and court costs incurred by reason of its position or

actions taken pursuant to the Escrow Instructions" and provided that the Busch Parties "shall not be liable for any error of judgment or for any act done or step taken or omission by it in good faith or for any mistake of fact or law for anything which [the Busch Parties] may do or refrain from doing in connection herewith, except its own gross negligence or willful misconduct" or liable to any parties to the agreement.

In May 2010, Berea and YBR executed an Asset Management Agreement stating stated that Berea would identify and manage the entry of the SBLC into an investment opportunity and make minimum payments to YBR of 15% of the SBLC value on a monthly basis for 12 months. On May 26, 2010, the final transaction documents were executed by the parties. After execution, YBR wired $300,000 to Busch Law Center's escrow account. On June 8, 2010, Mr. Childs stated that the SBLC would be delivered the following day. On June 10, 2010, YBR executed the Notice of Approval, which was transmitted to the Busch Parties. On June 11, 2010, Mr. Childs sent the purported SBLC to Mr. Busch. However, the SBLC was not a stamped copy, as required by the Escrow Instructions. Despite this, the Busch Parties distributed the remaining escrowed funds, less Mr. Busch's fees, directly to Mr. Childs and Mr. Koster. The Busch Parties never received the SBLC issued by Success Bullion or a stamped copy from any party.

On February 3, 2011, Richard Hall, of Berea, informed YBR that Berea had not been able to secure the SBLC, allegedly due to an error in the transmission between Success Bullion and the financial institution. On February 14, 2011, Mr. Welling sent an email to Berea, Alicorn, Mr. Childs, Mr. Koster, and Mr. Hall alleging that they had failed to execute the deal in accordance with the transaction documents. On October 16, 2012, YBR sent a demand letter to all involved parties alleging fraud. The Busch Parties failed to respond to the demand letter and, despite previous assurances to the contrary, no SBLC ever materialized.

On August 19, 2013, YBR filed suit against the counterparties to the transaction, alleging that numerous parties in various capacities conspired to defraud YBR, including the Busch Parties, in the U.S. District Court for the District of Minnesota. The allegations

1    were not identical but similar to those brought here, including seeking damages arising

2    out of the Busch Parties' services as an escrow agent in the transaction. The Minnesota

3    action was dismissed on August 7, 2014 based on a lack of personal jurisdiction. *See*

4    *Yellow Brick Road, LLC v. Childs*, 36 F. Supp. 3d 855 (D. Minn. 2014).

5         The Busch Parties then filed this action against YBR on December 11, 2013,

6    alleging Breach of Contract (Count 1) and seeking a Declaratory Judgment (Count 2) and

7    Attorney's Fees and Costs (Count 3), based on their claims that YBR breached their

8    agreement to indemnify and hold the Busch Parties harmless by bringing the Minnesota

9    action. (Doc. 1.) On August 15, 2014, YBR filed its Answer and Counterclaim, alleging

10   violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"),

11   18 U.S.C. § 1961 (Count 1), Conspiracy to Violate RICO (Count 2), Civil Conspiracy to

12   Commit Fraud (Count 3), Aiding and Abetting Fraud (Count 4), Conversion (Count 5),

13   and seeking a Declaratory Judgment that it not be required to abide by its agreement to

14   indemnify and hold the Busch Parties harmless (Count 6). (Doc. 42.)

15   **II.    LEGAL STANDARD**

16        Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

17   appropriate when: (1) the movant shows that there is no genuine dispute as to any

18   material fact; and (2) after viewing the evidence most favorably to the non-moving party,

19   the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v.*

20   *Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285,

21   1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect

22   the outcome of the suit under governing [substantive] law will properly preclude the

23   entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

24   A "genuine issue" of material fact arises only "if the evidence is such that a reasonable

25   jury could return a verdict for the non-moving party." *Id.*

26        In considering a motion for summary judgment, the court must regard as true the

27   non-moving party's evidence if it is supported by affidavits or other evidentiary material.

28   *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. The non-moving party may not

1   merely rest on its pleadings; it must produce some significant probative evidence tending

2   to contradict the moving party's allegations, thereby creating a question of material fact.

3   *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative

4   evidence in order to defeat a properly supported motion for summary judgment); *First*

5   *Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

6       "A summary judgment motion cannot be defeated by relying solely on conclusory

7   allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

8   1989). "Summary judgment must be entered 'against a party who fails to make a showing

9   sufficient to establish the existence of an element essential to that party's case, and on

10  which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d

11  1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

12  **III.   ANALYSIS**

13      Before assessing the parties' cross-motions for summary judgment on the merits,

14  the Court must address two preliminary matters underlying the motions and the evidence

15  supportive of each.

16      **A.   Mr. Busch's Invocation of his Fifth Amendment Privilege**

17      YBR asserts, in both response to the Busch Parties' Motion for Summary

18  Judgment and in support of YBR's Motion for Summary Judgment, that Mr. Busch's

19  declarations should be stricken because he repeatedly invoked the Fifth Amendment and

20  refused to answer deposition questions regarding the claims and defenses of the Busch

21  Parties in this matter. (YBR Resp. at 2-3; YBR MSJ at 9-10.) In spite of his invocation,

22  the Busch Parties' Motion and Response heavily rely on Mr. Busch's declarations,

23  including his avowals regarding the same topics he declined to testify on, in order to

24  establish or controvert facts. (*See, e.g.*, Doc. 122, Busch Statement of Facts ("SOF") ¶¶

25  11-15.)

26      In civil cases, the Fifth Amendment privilege against self-incrimination cannot be

27  used as both a shield and a sword, discarded "for the limited purpose of making

28  statements to support a summary judgment motion" but invoked to shield those

1   statements from further scrutiny. *U.S. v. $133,420.00 in U.S. Currency*, No. CV-09-8096-
2   PCT-NVW, 2010 WL 2594304, *6 (D. Ariz. June 23, 2010), *aff'd*, 672 F.3d 629 (9th Cir.
3   2012) (citing *In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991)). If a party seeks to use
4   the Fifth Amendment in such a manner, both asserting factual claims and refusing to be
5   questioned about those claims, the party's testimony may be stricken. *See In re Edmond*,
6   934 at 1308 (striking party's affidavit after he refused to answer deposition questions
7   about the subject of the affidavit on Fifth Amendment grounds); *United States v. Parcels*
8   *of Land*, 903 F.2d 36, 43 (1st Cir. 1990) (holding that the court had "ample authority" to
9   strike a party's affidavit after he invoked the Fifth Amendment and refused to answer
10  deposition questions about the subject of the affidavit).

11          Mr. Busch has attested to facts regarding his representations to YBR, his role in
12  the transaction, his knowledge and intent in acting as an escrow agent, and his
13  relationship to and communication with the other parties to the transaction, but only
14  where advantageous to his cause. He has blankly claimed he had no involvement in,
15  knowledge of, or reason to suspect any fraud in the at-issue transaction in his declarations
16  but declined to answer questions on those same subjects in his deposition. (*Compare*
17  Busch Parties SOF, Ex. B *with* YBR SOF, Ex. 21.) Moreover, Mr. Busch summarily
18  declined to testify about any of the claims the Busch Parties brought against YBR. (YBR
19  Resp. YBR SOF, Ex. 21 at 48:24-49:4.) In sum, Mr. Busch refused to testify about the
20  subject-matter underlying either his causes of action against YBR or YBR's causes of
21  action against the Busch Parties but made sweeping claims about each in his declarations.
22  This invocation of the Fifth Amendment is indistinguishable from the cited precedent and
23  is a clear example of the impermissible use of the privilege as both a shield and a sword.
24  Mr. Busch cannot be permitted to assert facts where it benefits his positions yet shield
25  those same subjects from adverse inquisition. To allow such use would be to permit the
26  Fifth Amendment privilege to "mutilate the truth." *Parcels of Land*, 903 F.2d at 43.

27          Accordingly, the Court will exercise its discretion and strike any statement in
28  either of Mr. Busch's declarations that was also the subject of a deposition question that

Mr. Busch refused to answer, including all statements in his declaration filed in support of the Busch Parties' Motion for Summary Judgment.[1] *See $133,420.*00, 672 F.3d at 641. Proceeding in this manner allows the Court to respect Mr. Busch's Fifth Amendment rights while preserving the fundamental truth-finding function of the judicial process. *Id.* at 641. In doing so, the Court must also disregard any statement of fact or controverting statement of fact that relies solely on Mr. Busch's declarations. *See* Fed. R. Civ. P. 56(c)(1)(A) ("a party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). Consequently, the Court will deem admitted any YBR statement of fact which is now uncontroverted by virtue of striking Mr. Busch's declaration. *See* LRCiv 56.1(b) ("Each numbered paragraph of the statement of facts set forth in the moving party's separate statement of facts shall, unless otherwise ordered, be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts.").

In addition to striking Mr. Busch's declaration, YBR also repeatedly suggests that, in light of the lack of testimony or evidence, the Court should draw adverse inferences against the Busch Parties on those subjects. (YBR MSJ at 9-10; YBR Resp. 6-9, 12; YBR Reply at 2, 7, 9.) YBR is correct in pointing out that a court is permitted to draw an adverse inference in a civil proceeding from a party's invocation of the Fifth Amendment privilege. *Baxter v. Palmigiano*, 425 U.S. 308, 318–19 (1976). Further, "a 'party who asserts the privilege must bear the consequences of lack of evidence,' *United States v. Taylor*, 975 F.2d 402, 404 (7th Cir. 1992), and the claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation." *United States v.*

---

[1] The Busch Parties argue that, because Mr. Busch was not asked and therefore did not refuse to testify as to the existence and cost of defending against YBR's Minnesota litigation his declarations should remain in the record, or are otherwise adequate to support summary judgment. (Busch Reply at 7-8.) However, that testimony would pertain only to the Busch Parties' claimed damages and not the merits or factual background of his claims and does not ameliorate the need for testimony on the substance of the Busch Parties' claims.

1   *Certain Real Prop. and Premises Known as: 4003–4005 5th Ave., Brooklyn, NY*, 55 F.3d

2   78, 83 (2d Cir. 1995) (citing 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus,

3   *Federal Practice and Procedure* § 2018 (2d ed. 1994)). However, the evidence produced

4   by a nonmoving party's silence alone is not sufficiently weighty to carry a moving

5   party's burden in a motion for summary judgment and must stand or fall on the merits of

6   the evidence adduced. As the Supreme Court has noted, "while the assertion of the Fifth

7   Amendment privilege against compulsory self-incrimination may be a valid ground upon

8   which a witness . . . declines to answer questions, it has never been thought to be in itself

9   a substitute for evidence that would assist in meeting a burden of production." *United

10  States v. Rylander*, 460 U.S. 752, 758 (1983); *see also Doe ex rel. Rudy-Glanzer*, 232

11  F.3d 1258, 1264 (9th Cir. 2000) (an adverse inference can only be drawn when

12  independent evidence exists as to the facts about which the party refuses to answer). Still,

13  where "the only other available evidence is adverse to the party invoking the Fifth

14  Amendment, the only reasonable inference that may be drawn from the invocation of the

15  Fifth Amendment is one adverse to the party invoking the Fifth Amendment." *City of

16  Chicago, Illinois v. Wolf*, No. 91 C 8161, 1993 WL 524383, at *2 (N.D. Ill. Dec. 13,

17  1993). As such, the Court will draw an adverse inference where appropriate and

18  necessary—*i.e.*, where YBR's independent evidence avers a conclusion that is or has

19  been met with silence or invocation of the Fifth Amendment by the Busch Parties.

20        **B.      YBR's Exhibits to its Statement of Facts**

21        Due to the preceding issues, the Busch Parties are foreclosed from asserting a

22  number of facts that contradict YBR's. Rather than asserting their own facts, the Busch

23  Parties lodge objections to the evidence YBR puts forth to support its facts—several of

24  which have merit. (*See generally* Busch CSOF.)

25        The Busch Parties object to several of YBR's exhibits attached to its Statement of

26  Facts—chiefly the Chronology of Events (YBR SOF, Ex. 20) from another court's docket

27  and other documentary evidence—on the grounds that they are hearsay, are submitted

28  without foundation or authentication, are not part of the record, or are otherwise

- 8 -

inadmissible and unsupported by deposition testimony, affidavit, declaration, discovery response, or other materials. (*See, e.g.*, Doc. 135, Busch CSOF at 7 ¶ 46.) "It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181–82 (9th Cir. 1988). Federal Rule of Civil Procedure 56(c) provides that a reviewing court may consider "depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there is a genuine issue as to a material fact. Neither *Celotex*, 477 U.S. at 317, nor *Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir. 1991), eliminated the requirement that a foundation must be presented to demonstrate the authenticity of proffered documents. Authenticating a document requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a).

YBR provides no foundation for many of its documents, even through attorney declaration. While they are conclusorily described in its statement of facts, YBR does not even provide fundamental facts regarding the documents, such as their author(s), purpose, or creation date. The Ninth Circuit "has consistently held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987). Here, the documentary evidence attached as exhibits—including the chronology, email correspondence, letters, and memoranda within that correspondence, as well as emails without any foundation—are not properly authenticated. Accordingly, the documents are inadmissible and the Court cannot rely on them in determining the existence of material issues of fact. Just as the Court struck Mr. Busch's declarations and facts that rely on them, it will disregard any improper evidence put forth by YBR and any statement of fact or controverting statement of fact that relies solely on inadmissible exhibits. The Court will not disregard, however, any self-authenticating documents, proper deposition testimony, discovery responses, or facts that are alleged by YBR and uncontested by the Busch Parties.

1    In regards to the hearsay objection to those documents, it is without question that a

2    party asserting that it is entitled to summary judgment may only rely on non-hearsay

3    evidence and other admissible documents. *See, e.g.*, *Gleklen v. Democratic Cong.*

4    *Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000) ("[v]erdicts cannot rest on

5    inadmissible evidence" and because a grant of summary judgment is a determination on

6    the merits of the case, it follows that the moving party's affidavits must be free of

7    hearsay); *City of Tenakee Springs v. Clough*, 750 F. Supp. 1406, 1416 (D. Alaska 1990),

8    *rev'd on other grounds*, 915 F.2d 1308 (9th Cir. 1990) ("Since summary judgment is a

9    substitute for a trial on the merits, it is vital that the party opposing the motion be

10   accorded the same evidentiary safeguards that would be applicable at trial . . . ."). While

11   YBR often argues that the statements in its exhibits are made by the Busch Parties or

12   their alleged co-conspirators, thereby eliminating any hearsay issues, those documents

13   remain without foundation and are not considered by the Court.

14       With regard to the Chronology of Events, YBR specifically argues that the Court

15   can take judicial notice of the document. (*E.g.*, YBR CSOF Resp. at 5-7.) While the

16   Court can take judicial notice of documents from an unrelated matter's docket, it can only

17   do so for the purposes of noticing the existence of the suit, the claims made therein, and

18   the fact that various documents were filed—not for the truth of the matters asserted. *See*

19   Fed. R. Evid. 201; *In re Bare Escentuals, Inc. Sec. Litig.*, No. C09-3268-PJH, 2010 WL

20   3893622, *11 (N.D. Cal., Sept. 30, 2010) ("[T]he Court may take judicial notice of the

21   existence of unrelated court documents, although it will not take judicial notice of such

22   documents for the truth of the matter asserted within.").

23   **C.    The Busch Parties' Claims**

24       Both parties seek summary judgment on each count of the Busch Parties'

25   Complaint. The Busch Parties' legal argument is brief, spanning less than three pages,

26   and largely relies on the language in the transaction agreements.[2] (Busch MSJ at 7-9.)

27   _____

28   [2] The Court notes that both parties repeatedly violated Federal Rule of Civil
     Procedure 56(c) and Local Rule 56.1(e) in their Motions. "Memoranda of law filed . . . in
     opposition to [or in support of] a motion for summary judgment . . . must include

- 10 -

1    Their argument is simple: Mr. Busch complied with the Escrow Instructions and duties as

2    an escrow agent; YBR was required to hold harmless and indemnify the Busch Parties for

3    their conduct under that agreement; and YBR nonetheless filed suit against the Busch

4    Parties in Minnesota.[3] (Busch MSJ at 7-9.)

5            The Busch Parties provide little legal citation for their argument but the case law

6    provided is accurate. The parties and intended beneficiaries to a contract are entitled to

7    enforce its terms and obtain relief in the event of its breach. (Busch MSJ at 8 (citing

8    *Samsel v. Allstate Ins. Co.*, 19 P.3d 621, 625 (Ariz. Ct. App. 2001).) However, the

9    counterparties are equally entitled to relief in the event of breach, and in response and in

10   its offensive Motion, YBR alleges the Busch Parties failed to comply with the explicit

11   terms of the Escrow Instructions, Mr. Busch failed as an escrow agent, and, by doing so,

12   the Busch Parties materially breached their agreement with YBR. (YBR Resp. at 9-11.)

13   Specifically, YBR alleges that the Busch Parties were not authorized to transfer the

14   remaining $250,000 in escrow until they received a stamped "copy" of the SBLC from

15   Success Bullion—an event that never occurred. (YBR Resp. at 9.) Regardless of the

16   source of the purported SBLC or whether it was properly stamped, an authentic SBLC

17   was never provided or received, as Mr. Hall admitted. (YBR MSJ at 5; YBR Resp. at 10.)

18   As such, YBR argues that the Busch Parties materially breached the Escrow Instructions,

19   thereby excusing YBR from further performance under that agreement, including its

20   obligation to indemnify and hold the Busch Parties harmless. (YBR Resp. at 11.) Mr.

21   Busch has declined to testify on these topics. He has not elaborated on whether or not he

22

23   citations to the specific paragraph in the statement of facts that supports assertions made
     in the memoranda regarding any material fact on which the party relies . . . ." LRCiv
24   56.1(e). While citations to the parties' statements are made in the background sections,
     their legal arguments are completely devoid of such citation, despite numerous references
25   to asserted facts.

26       [3] The Court notes that the Busch Parties' assertion that YBR "lost in that litigation
     when YBR's action was dismissed" is, at best, disingenuous. (Busch Reply at 8.) YBR's
27   Minnesota action was dismissed for lack of personal jurisdiction—the court explicitly did
     not reach the merits of the case. Any attempt to imply that those claims are without merit
28   due to its dismissal, or that they have any bearing on YBR's duty to indemnify and hold
     harmless here, is misleading.

1   received a stamped copy of the SBLC and, if so, from who, nor has he disclosed what

2   steps, if any, he took to ensure the authenticity of the SBLC or otherwise fulfill his

3   escrow duties.

4           In their Motion and Response, the Busch Parties go to great lengths to downplay

5   their role in the transaction and their duties therein. (*See* Busch MSJ at 3-4.) This

6   argument belies the Busch Parties' contention that they did not materially breach the

7   agreement. As they admit, the escrow duties were limited, requiring the Busch Parties

8   only to (1) accept $300,000 from YBR, (2) wire $50,000 to Success Bullion after

9   receiving a copy of the signed Engagement Letter, and (3) wire the remaining $250,000,

10  less escrow fees, to Alicorn after receiving various documents, primarily "a copy of the

11  'Stand By Letter of Credit', issued by the SBLC provider which will be stamped 'copy'."

12  (YBR SOF, Ex. 3.[4]) The undisputed facts are that the Busch Parties only received an

13  SBLC from Mr. Childs, with no verification that it was issued by Success Bullion and not

14  stamped "copy," and that no authentic SBLC ever existed. The Busch Parties contend

15  that YBR's facts only show that an electronic, non-stamped copy of the SBLC exists and

16  was transmitted to Mr. Busch, not that the Busch Parties did not receive a stamped copy

17  issued by Success Bullion as well. (Busch CSOF at 5 ¶ 35.) The Busch Parties' argument

18  _____

19  [4] The Court notes both the Busch Parties' objection to YBR's introduction of the
    transaction documents (Busch CSOF at 6-7) and that YBR has made virtually no effort to
20  properly authenticate the exhibits. However, at the summary judgment stage, "courts
    focus on admissibility of evidence's content, not its form," including hearsay evidence.
21  *United States v. HVI Cat Canyon, Inc.*, No. CV 11-5097 FMO (SSX), 2016 WL 7011348,
    at *7 (C.D. Cal. Sept. 30, 2016). The Court is reticent to allow lenience and take this
22  principle further than intended, particularly in regards to a moving party's evidence
    where the Court is required to view evidence in the light most favorable to the non-
23  movant. However, the transaction documents are central to the matter and no charge
    against their authenticity or their trial admissibility has been lodged. They can be
24  authenticated by several methods under the Federal Rules of Evidence, including
    901(b)(4). Moreover, despite the Busch Parties' objections, they do not dispute the
25  language encompassed in the transaction documents, often quote or paraphrase the same,
    and declined to testify as to any of the documents they produced in discovery. *See, e.g.*,
26  *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011) ("Where documents
    are otherwise submitted to the court, and where personal knowledge is not relied upon to
27  authenticate the document, the district court must consider alternative means of
    authentication under Federal Rules of Evidence 901(b)(4) . . . . Under Rule 901(b)(4),
28  'documents . . . could be authenticated by review of their contents if they appear to be
    sufficiently genuine.'" (quoting *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 778 n.24)
    (9th Cir. 2002)).

is true, as far as it goes—the production of a different version does not intuit the nonexistence of another. However, YBR's facts show that no other document was produced in discovery. (YBR SOF ¶¶ 25, 35, 37-38.) Further, Mr. Hall confirmed that no legitimate SBLC was ever delivered—a fact that the Busch Parties fail to respond to, by objection, controverting fact, or otherwise. (YBR SOF ¶ 38.) Were the proper document received, it is incumbent on the Busch Parties to produce that document, or at least provide testimony on the subject. Instead, because the only existing evidence avers that the proper document did not exist and was not received, and Mr. Busch has not given any testimony or facts to the contrary or provided evidence supportive of his claim that he properly performed his escrow duties, YBR is entitled to an adverse inference in response to Mr. Busch's silence. The same conclusions are available in deeming YBR's statements of fact admitted under Local Rule 56.1(b).

Accordingly, the facts show that the Busch Parties materially breached the agreement. Although their charge was modest, the Busch Parties failed to ensure that the proper documents were received before wiring any funds as directed. The likelihood that the Busch Parties' breach was material is exponentially increased by the simplicity and brevity of the limited instructions. Moreover, the Escrow Instructions specifically exclude gross negligence and willful misconduct—the existence of either of which the Busch Parties have not adequately refuted. Instead, YBR's facts support that the Busch Parties' conduct was, at best, gross negligence, and, at worst, willful misconduct. Similarly, YBR's agreement specifically covered acts or omissions in good faith, errors in judgment, or mistakes. The facts alleged by YBR, lack of testimony, and adverse inferences drawn, all offer only one conclusion: that the Busch Parties' conduct falls outside of the ambit of good faith, simple error, or mistake.

While the Busch Parties' obligations as an escrow agent may fall below what YBR has argued (YBR Resp. at 10), they nonetheless include strict compliance with the instructions and "scrupulous honesty, skill, and diligence." *Union Title Co. v. Burr*, 432 P.3d 476, 479 (Ariz. 1967); *Maxfield v. Martin*, 173 P.3d 476, 479 (Ariz. App. Ct. 2007).

1    Even the Busch Parties admit that they were required to "strictly" comply with the terms
2    of the escrow agreements. (Busch MSJ at 8.) Perhaps a more accurate fraudulent
3    document would have absolved the Busch Parties of their duties, but failure to comply
4    with one of only three basic terms—confirmation of a copy in accordance with the
5    Escrow Instructions—is not strict compliance. Because Mr. Busch declined to testify as
6    to any issues pertaining to his own claims against YBR, including the existence of the
7    requisite documents or his conduct in assuring their existence, the Court is unable to
8    conclude that the Busch Parties complied with those duties. Again, the facts presented
9    aver that they did not, including deemed admitted by virtue of Local Rule 56.1(d), and
10   the failure to testify gives way to an adverse inference. There is no genuine dispute of
11   material fact as to the Busch Parties' breach. Accordingly, YBR is excused from its
12   further obligations under that agreement, including its duty to indemnify and hold the
13   Busch Parties harmless. *Dialog4 Sys. Engineering GmbH v. Circuit Research Labs, Inc.*,
14   622 F. Supp. 2d 814, 820 (D. Ariz. 2009) ("[a] material breach excuses the non-breaching
15   party from performing under the contract"). The Court will therefore grant YBR's
16   Motion for Summary Judgment as to the Busch Parties' claims against it.

17          **C.     YBR's Claims**

18          Both parties also seek summary judgment on Counts 1-5 of YBR's Counterclaim.[5]
19   Because this Court has stricken much of Mr. Busch's declaration, his ability to contest
20   YBR's facts is hindered and left only to other evidence. As such, the Busch Parties fail to
21   provide countervailing facts regarding: (1) the entirety of the relationship between
22   Alicorn, Berea, the Busch Parties, and any other party involved in the negotiation or
23   execution of the transaction; (2) the Busch Parties' role in the YBR transaction; (3)
24   whether or not the Busch Parties knowingly agreed to participate in a fraudulent
25   transaction, intended to defraud YBR, or were otherwise aware of the existence, nature,

26   _____

27          [5] The Parties do not address YBR's claim seeking a declaratory judgment as to its
     obligations under the Engagement Letter and Escrow Instructions (Count 6). This is
28   resolved by the Court's granting YBR's Motion for Summary Judgment as to the Busch
     Parties' claims.

1    or scope of any plan designed to defraud YBR and others; (4) the Busch Parties' input,

2    direction, or control over the transaction documents, their function, or the performance

3    thereunder; or (5) the majority of the Busch Parties' conduct and performance in

4    executing the transaction. (*See* Busch CSOF ¶¶ 1-3, 11-15, 20-21, 24 (each relying solely

5    on Busch's declaration).) Without the preceding ability, the Court will summarily deny

6    the Busch Parties' Motion and move to analyzing YBR's Motion. Even in instances

7    where the Court will not grant summary judgment to YBR, its facts, contentions,

8    inferences, and evidence (admissible or otherwise) create a genuine issue of material fact

9    that precludes granting summary judgment to the Busch Parties.

10         At the outset, the Court addresses the Busch Parties' underlying contention to all

11   of YBR's claims: that "YBR must establish that Busch, while acting as an escrow agent

12   in the YBR Transaction, was at a minimum aware that a fraud was being perpetuated

13   upon YBR." (Busch MSJ at 10.) The Busch Parties argue YBR has failed to do so. As

14   stated, without Mr. Busch's declarations, the Busch Parties are unable to establish their

15   knowledge and intent. Even then, the Busch Parties only assert that they were unaware of

16   the fraud *at the time* of the transaction. (*E.g.*, Busch MSJ at 10.) As such, where YBR

17   puts forth facts that aver knowledge or intent, the omission of controverting facts and

18   proper adverse inference allow it to meet its burden.

19              **1.       Violation of 18 U.S.C. § 1962, *et seq.* (RICO) (Count 1)**

20         The elements of a civil RICO claim are that a defendant participated in (1) the

21   conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of

22   racketeering activity. *Elec. Prop. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997

23   (9th Cir. 2014) (citing 18 U.S.C. § 1962(c)). Under 18 U.S.C. § 1961(4), an enterprise

24   includes "any individual, partnership, corporation, association, or other legal entity, and

25   any union or group of individuals associated in fact although not a legal entity." The

26   Busch Parties fail to meet the argument that an enterprise affecting interstate commerce

27   does not exist and the Court will consider that RICO element as met.

28

1    However, pursuant to 18 U.S.C. § 1961(5), a civil RICO claim requires at least

2    two acts of racketeering to constitute a pattern. The requisite acts must be "related" and

3    amount to or pose a threat of continue criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*,

4    492 U.S. 229, 239 (1989). Here, YBR has alleged a pattern of wire fraud conducted by

5    Mr. Childs, Mr. Koster, and the Busch Parties. The elements of a claim for wire fraud

6    are: (1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to

7    further the scheme; and (3) specific intent to defraud. *United States v. Pelisamen*, 641

8    F.3d 399, 409 (9th Cir. 2011) (citation omitted).

9    YBR has presented uncontested facts that it was defrauded and U.S. wires were

10   used in furtherance of the scheme to defraud. Specifically, YBR transferred the funds to

11   the Busch Parties and Mr. Busch released the funds to various recipients via wire transfer.

12   However, each of these acts were in furtherance of a singular fraud against YBR and do

13   not, by themselves, pose a threat to continued criminal activity. The Ninth Circuit has

14   rejected several RICO claims where the objects of defendants' alleged acts of fraud were

15   performed with respect to a single transaction. *See, e.g.*, *Medallion Enterps., Inc. v.

16   SelecTV of Cal., Inc.*, 833 F.2d 1360, 1365 (9th Cir. 1987). The isolated transaction

17   terminated on a date certain, the entirety of the transaction has concluded, and without

18   additional evidence, the threat of further fraudulent activity cannot be ascertained from

19   the record. Although YBR may be entitled to an adverse inference regarding Mr. Busch's

20   silence with respect to his relationship with the other parties, particularly in other similar

21   transactions, to allow an inference to prove a pattern of criminal activity, without other

22   evidence, is too much. However, it does create a question for a factfinder to determine

23   and YBR has produced evidence which, if admissible, would create a genuine dispute of

24   material fact. Accordingly, although the Busch Parties are not entitled to summary

25   judgment on this count as YBR's evidence defeats their Motion as the non-movant,

26   YBR's Motion for Summary Judgment must also be denied as to Count 1.

27

28

1         **2.**       **Conspiracy to Violate 18 U.S.C. § 1962,** *et seq.* **(Count 2)**

2         Under 18 U.S.C. § 1962(d), it is unlawful for a person to conspire to violate any

3 provision of § 1962. A claim under this section requires that a defendant be "aware of the

4 essential nature and scope of the enterprise and intended to participate in it." *United*

5 *States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) (quotation omitted). For the

6 reasons that precede, YBR is not entitled to summary judgment on its conspiracy to

7 violate § 1962. Although Mr. Busch declined to testify as to his knowledge and

8 participation, allowing an adverse inference on each, the allegations regarding

9 Mr. Busch's frequent acts as an escrow agent in similar schemes are not properly before

10 the Court. Accordingly, YBR can only prove knowledge and intent—via adverse

11 inference—as to this transaction, which is less than the essential scope required by

12 § 1962(d). For the reasons stated in the preceding section, the parties are equally

13 unentitled to summary judgment as to Count 2.

14         **3.**       **Civil Conspiracy to Commit Fraud (Count 3)**

15         "For a civil conspiracy to occur two or more people must agree to accomplish an

16 unlawful purpose or to accomplish a lawful object by unlawful means, causing damages."

17 *Baker v. Stewart Title & Trust of Phoenix*, 5 P.3d 249, 256 (Ariz. App. Ct. 2000)

18 (quotation omitted). "In short, liability for civil conspiracy requires that two or more

19 individuals agree and thereupon accomplish 'an underlying tort which the alleged

20 conspirators agreed to commit.'" *Wells Fargo Bank v. Ariz. Laborers, Teamsters &*

21 *Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 36 (Ariz. 2002) (quoting

22 *Id.*). "The conspiratorial agreement need not be express; it may be implied by the tortious

23 conduct itself." *Id.* (citing Restatement (Second) of Torts § 876 cmt. a (1979)).

24         To prove fraud, a plaintiff must establish: (1) a representation; (2) its falsity; (3) its

25 materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the

26 speaker's intent that it should be acted upon by the person and in the manner reasonably

27 contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its

28 truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate

injury. *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 (Ariz. Ct. App. 2014).

Here, YBR has presented facts that the counterparties to the transaction made false representations regarding the SBLC—including its very existence—YBR's lease of that document, and the gains YBR would receive. YBR has also presented facts that it relied on those representations, without knowledge of their falsity, and made payment in accordance with those representations. Despite its compliance, the SBLC was never delivered nor is there any contention that it ever existed. YBR's payment was, in essence, for nothing—and certainly not what the representations promised. Moreover, despite the fact that it is undisputed that a valid SBLC never existed, an electronic, non-stamped copy exists. The existence of this document illustrates fraud perpetuated by at least one party. While the Court again disregards YBR's evidence of a conspiratorial agreement based on previous or subsequent transactions involving the Busch Parties, the undisputed facts nevertheless demonstrate a conspiracy to commit the fraud. Although it is unclear what, if any, statements the Busch Parties made to YBR itself, because the conspiratorial conduct can be inferred from the tortious conduct itself and YBR has produced uncontested facts that the tortious conduct occurred, YBR is again entitled to an adverse inference regarding the Busch Parties' agreement to commit the fraud, Mr. Busch declined to testify as to his knowledge of the fraud, the Busch Parties' relationship with the other parties, or the Busch Parties' involvement in this or any other transactions. Accordingly, there is no genuine dispute of material fact as to the fraud perpetrated and the Busch Parties' involvement and awareness of the fraud. The Court will grant summary judgment to YBR on its civil conspiracy claim (Count 3).

### 4.    Aiding and Abetting Fraud (Count 4)

"Arizona recognizes aiding and abetting as embodied in Restatement § 876(b), that a person who aids and abets a tortfeasor is himself liable for the resulting harm to a third person." *Wells Fargo Bank*, 38 P.3d 12, 23 (citation omitted). As stated, YBR has put forth uncontested facts illustrating fraud and the Busch Parties' involvement in that

1    fraud. The Busch Parties contend that they did not substantially assist or "make it easier

2    for the violation to occur." (Busch MSJ at 15-16.) However, YBR has proffered facts that

3    they would not have agreed to the transaction without the presence of a lawyer and

4    escrow agent to give the deal the appearance of propriety, and the transaction documents

5    and functioning of the matter show that the deal could not have been completed without

6    the Busch Parties. (YBR SOF ¶¶ 18-21.) Because Mr. Busch declined to testify regarding

7    his involvement in the transaction and relationship to the other tortfeasors, as well as the

8    adverse inference that is properly drawn from his silence and the lack of contrary

9    evidence, YBR is equally entitled to summary judgment on its aiding and abetting fraud

10   claim (Count 4).

11                        **5.      Conversion (Count 5)**

12         "Conversion is an intentional exercise of dominion or control over a chattel which

13   so seriously interferes with the right of another to control it that the actor may justly be

14   required to pay the other the full value of the chattel." *Miller v. Hehlen*, 104 P.3d 193

15   (Ariz. Ct. App. 2005) (citing Restatement (Second) of Torts § 222A(1) (1965)).

16         YBR's uncontroverted facts show that it transferred $300,000 to the Busch Parties

17   for the sole purpose of leasing the SBLC. An authentic SBLC was never provided or

18   received. Although not incumbent upon the Busch Parties to secure the SBLC, it was

19   incumbent on them to properly verify its authenticity upon receipt, at least as described in

20   its Escrow Duties and in accordance with the obligations of any escrow agent. The Busch

21   Parties have not produced a proper copy of the SBLC that would have permitted it to

22   transfer the funds, nor have they produced testimony regarding the performance of its

23   escrow duties. Accordingly, there is no genuine dispute of material fact regarding the

24   Busch Parties' improper exercise of control over $300,000 in violation of the Escrow

25   Instructions and their duties as escrow agent. The Court will accordingly grant YBR's

26   Motion for Summary Judgment as to its Conversion claim (Count 5).

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    **D.**    **YBR's Damages**

    YBR seeks recovery of the principal sum of $1,500,000 in damages, treble damages pursuant to 18 U.S.C. § 1964(c), and punitive damages, together with interest, attorneys' fees, and costs. (YBR MSJ at 16.) YBR has calculated the principal sum based on the 15% return it was promised in the transaction. (YBR MSJ at 16-17.) Trebling damages pursuant to 18 U.S.C. § 1964(c) would allegedly bring the principal sum to $4,500,000. (YBR MSJ at 17.) However, the Court will not grant summary judgment as to YBR's RICO claims and treble damages under that statute are thus unwarranted at this stage. Further, as the Court has elsewhere stated in this matter (Docs. 144, 145), YBR's principal damages are not to be calculated as loss of expected profit, but as loss of investment. As such, YBR's principal damages for which it is to be compensated is their investment amount: $300,000. *See, e.g.*, *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 345 (Ariz. Ct. App. 1996) ("Compensatory damages are intended to compensate a tort plaintiff for losses suffered." (citing Restatement (Second) of Torts § 903 (1979))).

    YBR also seeks punitive damages under Arizona law, which are awardable in fraud-based claims upon a finding of gross fraudulent activity or malice and ill will. YBR argues that punitive damages are warranted as the fraudulent scheme was complex, perpetuated on others—resulting in indictments in Alabama and Arizona, as well as state bar complaints—and that the Busch Parties' involvement was specifically designed to give credibility to the scheme by implying a lawyer's imprimatur. As stated, much of the evidence that supports YBR's argument has not been marshalled in an admissible form. Moreover, because YBR's RICO claims will proceed to trial—which include the possibility of treble damages—it is inappropriate to grant summary judgment as to a specified amount of damages and those issues will proceed with the remaining claims or be resolved at the conclusion of the matter.

## IV.    CONCLUSION

As YBR states, the evidence shows that failure to strictly comply with the Escrow Instructions thwarted the very purpose of the escrow—to confirm receipt of proper documentation before releasing the funds. In violating the Escrow Instructions, the Busch Parties materially breached the operative agreements and undermined the very purpose of those agreements—for YBR to obtain and lease a SBLC for its capital contribution. As such, YBR is absolved of its further obligations under that agreement, including any continuing obligation to the Busch Parties, and is entitled to summary judgment on the Busch Parties' claims.

In addition to summary judgment as to the Busch Parties' claims, YBR is entitled to summary judgment on the majority of its claims. Although YBR has not presented uncontested facts regarding a fraudulent scheme predating or continuing after its transaction, it has put forth evidence that a fraud occurred and that the Busch Parties played a role in that fraud. These facts are met with silence and no genuine issue of material fact exists as to the Busch Parties' remaining liability.

**IT IS THEREFORE ORDERED** denying Plaintiff and Counterdefendants Larry J. Busch and Busch Law Center, LLC's Motion for Summary Judgment (Doc. 121).

**IT IS FURTHER ORDERED** granting in part and denying in part Defendant and Counterclaimant Yellow Brick Road, LLC's Cross-Motion for Summary Judgment (Doc. 129). YBR is not entitled to summary judgment on its RICO claims, Counts I-II or damages and those will proceed to trial. YBR did not seek summary judgment on its Declaratory Judgment claim, Count VI. YBR is entitled to summary judgment on the remainder of its counterclaims, Counts III-V, as well as all of the Busch Parties' claims as set forth in this Order.

Dated this 9th day of March, 2017.

_____
Honorable John J. Tuchi
United States District Judge